

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 07 CR 732 |
| | ) | Magistrate Judge Valdez |
| MARY GURIN | ) | |

## ORDER

The Court, having held a preliminary examination in this matter, finds that probable cause exists to hold the defendant to answer in the district court for the two count charge as noted in the criminal complaint filed in this case for violations of 8 U.S.C. § 1324(a)(1)(A)(iii) and 42 U.S.C. § 408(a)(7)(B).

The sole purpose of the preliminary hearing is to determine whether there is "probable cause to believe that an offense has been committed and that this defendant committed it." Fed Crim Pro Rule 5.1(a). The rule allows the Court to consider and rely on hearsay evidence. It also allows a defendant to cross-exam witnesses. Further, in making this determination, courts apply a "totality of the circumstances analysis" and "make a practical, common sense decision whether, given all the circumstances . . . , there is a fair probability" that the defendant committed the crime. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Here, Special Agent Ransford testified to the statements in the affidavit in support of the criminal complaint and provided additional facts and exhibits. The defendant did exercise the right to cross-exam the agent but did not choose to call any witnesses on her own behalf. The Court finds the testimony of Special Agent Ransford and the evidence to be sufficiently credible and reliable to establish the following:

Ms. Gurin was a supervisor in the office of Ideal Staffing. Co-defendant Benitez worked under Ms. Gurin at Ideal Staffing. The Government introduced Government Exhibit 2 and 3 which purport to be applications of Ms. Benitez for a photo identification badge to allow secured admittance at Chicago O'Hare Airport. As reflected in these exhibits, a name printed as "Mary Gurin" appears and a signature of "M. Gurin" is listed as the "employer" of Ms. Benitez. In Exhibit 3, in the section "to be completed by the [ ] applicant's EMPLOYER," the name Mary Gurin is noted and a signature of "M. Gurin" is listed as the "supervisor" of Ms. Benitez. Further, Ms. Benitez gave a statement to law enforcement identifying Ms. Gurin as her supervisor.

Ms. Benitez also implicated Ms. Gurin as having knowledge of Ms. Benitez's undocumented immigration status in the United States while continuing to employ her. According to Special Agent Ransford, Ms. Benitez told law enforcement that she stated to Ms. Gurin she was from Mexico at around the time she was hired, and although she did provide a social security number to Ms. Gurin, she did not actually show any documents to Ms. Gurin. A person signing as Mary Gurin did certify on Government Exhibit 3 "that documents of identification, employment eligibility and citizenship pertaining to the applicant have been verified and appear genuine" when, according to the Benitez statement, no such documents were ever provided to Ms. Gurin. While this may be circumstantial evidence of Ms. Gurin's knowledge, for purposes of this preliminary determination it is enough.

Ms. Benitez also implicated Ms. Gurin as the supervisor who directed her to use her bilingual skills to recruit workers. The evidence to date also suggests that Ms. Gurin kept O'Hare identification badges in her desk. Such badges were found in one of two desks at Ideal

Staffing and were found in the desk that had Gurin's family pictures on it and whose desk was identified by Benitez as belonging to Gurin. Benitez used these badges to provide access to O'Hare Airport to Ideal Staff employees who did not have the proper documents to work. The evidence to date also suggests that Gurin was aware of problems with the work documents of some of the employees. In 2004, 2005 and 2006 the Social Security Administration sent "no match" letters to Ideal Staffing. These letters describe to the employers that the social security numbers of identified employees did not match the name given by the employee. According to Special Agent Ransford, in 2004 there were 63 inconsistent matches identified in the "no match" letter. In 2005, there were 131 and in 2006, there were 202. The "no match" letters were found in the desk identified as Ms. Gurin's desk at Ideal Staffing.

Further, as stated in paragraph 33 of the affidavit in support of this Criminal Complaint, Ms. Gurin was certifying and authorizing airport security badges for Ideal Staffing workers. She certified and verified 134 of 153 applications for badges. Of the 134 she certified, 110 of the applications had inconsistent social security numbers based on the name provided. Of the 110 inconsistent applicants, 37 had previously been identified by the Social Security Administration to Ideal Staffing in a "no match" letter to Ideal Staffing. According to Benitez, Gurin was aware of the "no match" letters.

In corroboration of some of the Benitez statements, two cooperating informants provided information to law enforcement and both have indications of reliability as the agents have been able to corroborate their statements and actions through recorded conversations. Overall, the evidence, sufficient in nature, has established that there is probable cause to believe that the

offenses alleged in the complaint entitled *U.S. v. Gurin,* 07 CR 732, has been committed and that the defendant has committed it. The defendant will be held to answer in the district court.

ENTER:

*Maria Valdez*

MARIA VALDEZ
United States Magistrate Judge

Dated: November 16, 2007